**Emanuel HOLLMAN, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 78 Civ. 1155(MP).**

United States District Court, S. D. New York.

Nov. 13, 1980.

Kathleen L. Coles, New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty. for the Southern District of New York by Barbara L. Schulmen, Asst. U. S. Atty., New York City, for defendant.

## OPINION

MILTON POLLACK, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the determination of the Secretary of Health, Education and Welfare, now the Secretary of Health and Human Services (hereinafter "the Secretary"), not to amend her records to reflect additional self–employment income claimed by the plaintiff, Mr. Hollman.

Plaintiff was awarded Social Security disability benefits in 1965 based on a finding by the Secretary that Mr. Hollman had established a period of disability beginning March 31, 1961. On July 11, 1974, the plaintiff requested the Secretary to recalculate the level of benefits he was receiving to reflect increased self–employment earnings for the years 1952 through 1955. The Secretary agreed to revise Mr. Hollman's earnings record to reflect increased earnings reported on an amended tax return filed in June, 1956. As to other income in the years 1952 through 1954, Mr. Hollman's request for recalculation was denied. Contentions raised by Mr. Hollman in his request for reconsideration were rejected. On September 15, 1977, Mr. Hollman appeared before Administrative Law Judge Waldman and represented himself in a *de novo* administrative hearing. Judge Waldman rendered a written decision holding that Mr. Hollman was not entitled to cor-rection of his self–employment income on October 27, 1977. The Appeals Council affirmed.

On October 4, 1978, Mr. Hollman appeared before Judge Pollack, pro se, in an action under 42 U.S.C. § 405(g) to review the Secretary's determination. Judge Pollack held that the decision to deny relief "was entirely appropriate on the facts and the law." He granted summary judgment for the defendant. Mr. Hollman filed a brief and appendix in the Court of Appeals. After an initial appearance before the Court of Appeals, Mr. Hollman was assigned counsel. The Court granted Mr. Hollman's lawyer's motion to supplement the record to introduce additional evidence to establish that good cause exists under 42 U.S.C. § 405(g) to remand the case to the Secretary. Subsequently, the Court of Appeals vacated the judgment of the District Court and remanded for reconsideration by Judge Pollack stating that: "[s]ince appellant was unrepresented in the district court and since the issues raised by competent counsel are substantial, we believe it sound judicial administration to have these issues passed on in the first instance by the district court."

On remand, counsel for Mr. Hollman argues two points: 1) that the limitation period in 42 U.S.C. § 405(c) is tolled by mental incompetency and that the case should therefore be remanded to the Secretary to determine whether Mr. Hollman was mentally incompetent during the relevant period and 2) that Judge Pollack should reconsider his original decision with respect to the year 1953 that Mr. Hollman's case did not fall within the "tax return" exception to the time limitation, 42 U.S.C. § 405(c)(5)(F)(i).

For the reasons shown hereafter, the Secretary is entitled to summary judgment with respect to plaintiff's first point. With respect to plaintiff's second point, the case is remanded for consideration in light of the Court's holding herein.

I.

Mr. Hollman has supplemented the record with materials that suggest that he may

have been mentally incompetent during the three year, three month and fifteen day time limitation periods following each of the years for which he now claims the right to have his records amended. Even if it were the case, however, that he was incompetent during these periods, the clear intent of the time limitation period incorporated in Section 205(c) of the Social Security Act, 42 U.S.C. § 405(c), is to bar his claim to amend his self–employment income.

■ The scheme for providing self–employed persons with retirement insurance is carefully and tightly drawn. Prior to 1950, self–employed persons such as Mr. Hollman, were not even covered by Social Security because "there was no agreement on a feasible method of obtaining . . . reports of their income." S.Rep.No.1669, 81st Cong., 2d Sess., *reprinted in* [1950] U.S.Code Cong. Serv. pp. 3287, 3299. When Congress decided in 1950 to amend the Act to include self–employed persons in the retirement insurance system, the crucial factor in the decision was the existence of a workable mechanism for determining their earnings. "Reliance on the income tax system was regarded as the only workable plan." *Shore v. Califano*, 589 F.2d 1232 (3rd Cir. 1978).

Under the statute the Secretary is charged with the responsibility of establishing and maintaining records of wages and self–employment income. 42 U.S.C. § 405(c)(2)(A). Actions by individuals to amend the Secretary's records of wages or self–employment income are subject to a time limitation of three years, three months and fifteen days following the year at issue. 42 U.S.C. § 405(c)(1)(B). With respect to actions by individuals to amend the Secretary's records after the time limitation period, the statute distinguishes between wage–earners and self–employed persons. Whereas for wage–earners the absence of an entry in the Secretary's records is only presumptive evidence after the expiration of the time period, as to self–employed persons:

the absence of an entry in the Secretary's records as to the self–employment income

alleged to have been derived by an individual in such year shall be *conclusive* for purposes of this subchapter that no such alleged self–employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self–employment income for such year before the expiration of the time limitation following such year, in which case the Secretary shall include in his records the self–employment income of such individual for such year.

42 U.S.C. § 405(c)(4)(C) (emphasis supplied).

■ There are ten specific exceptions to the conclusive effect after the expiration of the time limitation period. 42 U.S.C. § 405(c)(5). Mental incompetency is not among them. "As a general rule, '[w]here a statute makes certain specific exceptions to its general provisions, it is generally safe to assume that all other exceptions were intended to be excluded.'" *Herzberg v. Finch*, 321 F.Supp. 1367, 1369 (S.D.N.Y. 1971) (quoting McCaffrey, Statutory Construction 125 (1953)) (interpreting 42 U.S.C. § 402(d)(5)). In this case, where the right to social security benefits is a right created by Congress, the time limitation incorporated by Congress must be strictly construed. *Ewing v. Risher*, 176 F.2d 641, 644 (10th Cir. 1949). "Though this conclusion may seem harsh, we must follow the plain mandate of Congress when, as here, it is acting within its powers to prescribe conditions and limitations as a means of preserving the fiscal integrity of the fund." *Johnson v. United States*, 572 F.2d 697, 699 (9th Cir. 1978) (holding that incapacity does not excuse failure to file for social security benefits under 42 U.S.C. § 402). As one court has put it:

It is unfortunate that plaintiff must go without the insurance benefits. But the immensity of the problem of providing Social Security 'called forth a highly complex and interrelated statutory structure.' The mandate to the Secretary in 42 U.S.C. § 405(c)(2) to maintain HEW records of self–employment income was necessary for the determination in an orderly manner of the innumerable requests for

insurance benefits. Congress recognized that a beginning and end of time for establishing eligibility was an essential part of that need by prescribing a "time limitation" within which changes and revisions in the Secretary's records might be made. One need only be reasonable to foresee the disaster in HEW if there were not a reasonable time limitation for ending disputes about eligibility benefits. *Lasch v. Richardson*, 457 F.2d 435, 440 (7th Cir.) *cert. denied* 409 U.S. 889, 93 S.Ct. 160, 34 L.Ed.2d 146 (1972) (holding that the time limitation in 42 U.S.C. § 405(c) does not offend the due process clause) (citation omitted). This court is not empowered to legislate where Congress has failed to do so. Congress having failed to include mental incompetency among the exceptions to the time limitation under § 405(c), Mr. Hollman's claim based on mental incompetency must be dismissed.

This decision is buttressed by numerous analogous holdings in other cases. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), requires that a request for review of an agency determination be filed within sixty days of the final decision. In *Wimberley v. Finch*, 446 F.2d 888 (9th Cir.), *reh. denied* (1971), plaintiff failed to file for review within sixty days and the district court held that plaintiff's disability did not toll the sixty day limit. Other sections of the Act limit individuals' rights to benefits by requiring that an application for them be filed, and the courts have refused to bend that requirement. *See, e. g. Johnson v. United States*, 572 F.2d 697, 699 (9th Cir. 1978) (denying retroactive benefits to a minor child for failure to file an application as required by 42 U.S.C. § 402); *Ewing v. Risher*, 176 F.2d 641 (10th Cir. 1949) (denying benefits to a widow because an application was not filed within the time limit set in Section 202(g), 42 U.S.C. § 402(g)). Moreover, the Court of Appeals for the Third Circuit has specifically refused to waive the filing requirement for mental incompetence. *Coy v. Folsom*, 228 F.2d 276, 279 (3rd Cir. 1955) (denying the posthumous application for old age benefits by a potential beneficiary's widow). Similarly, the statute of limitations in the Federal Tort Claims Act contains no tolling provision for insanity, and the courts have refused to toll it for that. *See, e. g. Casias v. United States*, 532 F.2d 1339, 1342 (10th Cir. 1979); *Jackson v. United States*, 234 F.Supp. 586, 587 (E.D.S.C.1964). One court has flatly stated "Insanity does not prevent a federal statute of limitations from running." *Accardi v. United States*, 435 F.2d 1239, 1240 n. 2 (3rd Cir. 1970) (citing *Williams v. United States*, 228 F.2d 129 (4th Cir. 1955), *cert. denied* 351 U.S. 986, 76 S.Ct. 1054, 100 L.Ed. 1499, *reh. denied* 352 U.S. 860, 77 S.Ct. 26, 1 L.Ed.2d 71 and *Jackson v. United States, supra*).

## II.

Mr. Hollman claims that his earnings record for the year 1953 should be revised to reflect disallowed deductions amounting to $1300. The Secretary contends that the time limitation period for that year has long since run.

On February 15, 1957, one month short of the end of the time limitation period for revision of 1953 earnings, Mr. Hollman and a delegate of the Secretary of the Treasury executed an agreement extending the time within which the I.R.S. could make assessments and collect any deficiencies due for the taxable year 1953. Pursuant to two subsequent consent agreements, the time for such assessments and collection was extended to June 30, 1960. Ultimately, in 1962, the Tax Court disallowed $1300 of the business deductions Mr. Hollman claimed in 1953 thus raising his net taxable income for that year by $1300. Mr. Hollman wants this increase reflected in his social security records.

Mr. Hollman contends that, having signed the consent form within the time limitation for 1953 income, he falls within the "tax return" exception to the time limitation as set forth in Section 205(c)(5)(F) of the Social Security Act, 42 U.S.C. § 405(c)(5)(F), which permits the Secretary, after the expiration of the time limitation, to conform his records to "tax returns or portions thereof

(including information returns or other written statements) filed with the Commissioner of Internal Revenue ... except that no amount of self–employment income of an individual for any taxable year (if such return or statement was filed after the expiration of the time limitation following the taxable year) shall be included in the Secretary's records pursuant to this subparagraph ... "

Two cases have previously held that consent forms executed within the time limitation period satisfy the requirements of this exception and this Court is in agreement with their reasoning:

> It seems clear that the plaintiff would have been entitled to have the Secretary correct the records if the IRS had completed its audit and reached a settlement with the plaintiff prior to the expiration of the time limitation. It also seems clear that the plaintiff would have been entitled to have the Secretary correct the records if prior to the expiration of the time limitation the IRS had completed its audit and made a jeopardy assessment because the plaintiff had refused to consent to extending the time limitation. It would be inconsistent and harsh to refuse to correct the records because the IRS failed to complete its audit in a more expeditious fashion or because the plaintiff was willing to extend the time limitations.

*North v. Califano,* [1978 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 15,720 (D.Minn. 1978); *Ellis v. Gardner,* 304 F.Supp. 765 (E.D.Pa.1969).

█ The revision by the Tax Court of Mr. Hollman's net taxable income in 1962 may appropriately be deemed to have become known to the Secretary and imputed to and become part of her records of Mr. Hollman's taxable income for the year 1953. The Secretary did revise his 1955 earnings record in arriving at the quantum of his benefits when they were questioned in 1974. Since this Court now holds that the time limitation period for 1953 was equitably tolled by the signing of the consent forms, presumably the Secretary might also be willing to consider a revision to take account of the change made by the Tax Court in 1962 of the 1953 tax record, a point which Mr. Hollman also raised in 1974. There is no indication that the Tax Court decision was actually considered by the Secretary in the calculation of Mr. Hollman's earnings for 1953 albeit that the ALJ alludes thereto. Accordingly the case is remanded on this question alone for consideration thereof by the Secretary.

Jurisdiction of this Court will be continued pending a report on the question indicated.

SO ORDERED.