**Adeline Gordon LEVINE, o/b/o Benjamin Gordon (Deceased), Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

No. CIV–79–585C.

United States District Court,
W. D. New York.

Dec. 28, 1981.

Adeline Gordon Levine and Murray Levine, pro se, for plaintiff.

Department of Health and Human Services, New York City (Amy Yourman, Asst. Regional Atty., New York City, of counsel), for defendant.

CURTIN, Chief Judge.

Plaintiff Adeline Gordon Levine is the daughter of the deceased, Benjamin Gordon. Plaintiff brings this action pursuant to 42 U.S.C. § 1395ff(b) for review of a final determination of the Secretary of Health and Human Services denying Mr. Gordon's application for hospital insurance benefits and post-hospital extended care benefits.

The facts are not disputed. Mr. Gordon was in poor health during his last years and spent the years from August 24, 1976, until his death on April 30, 1978, in hospitals or in extended care facilities.[1] In all, Mr. Gordon was hospitalized for a total of 74 days. He received Medicare insurance benefits for each day of in-patient care up to the sixtieth day of his hospitalization. His stay in post-hospital extended care facilities amounted to a total of 370 days. Mr. Gordon received coverage for 100 of these days, including the time spent at the Rosa Coplon Home [Coplon Home] from November 22, 1976, to January 18, 1977, and from January 26, 1977, to February 6, 1977.

This controversy surrounds Mr. Gordon's hospitalization at the Millard Fillmore Hospital on July 15, 1977, for treatment of pulmonary edema and the extended care he received at the Coplon Home following his discharge from the hospital on July 25, 1977. Because the Social Security Administration determined that this hospitalization was for a continuation of Mr. Gordon's pre-

---

1. The following chart is a summary of the dates of Mr. Gordon's hospitalizations, his residences in extended care facilities, and the Medicare benefits received by him.

| Facility | Duration of Stay | Benefit Days Granted | |
|---|---|---|---|
| | | Hospital | Nursing Home |
| Geneva General Hospital | 8/24/76–10/18/76 (57 days) | 57 | |
| Geneva General Hospital, Skilled Nursing Facility | 10/20/76–11/21/76 (32 days) | | 32 |
| Rosa Coplon Home | 11/22/76– 1/18/77 (58 days) | | 58 |
| Buffalo General Hospital | 1/19/77– 1/25/77 ( 7 days) | 7 | |
| Rosa Coplon Home | 1/26/77– 7/14/77 (70 days) | | 10 |
| Millard Fillmore Hospital | 7/15/77– 7/24/77 (10 days) | 10 | |
| Rosa Coplon Home | 7/25/77– Death | | |
| | | 74 | 100 |

viously existing malady and not for a new "spell of illness" within the meaning of 42 U.S.C. § 1395x(a), he was charged for co-insurance payments for this hospital stay. He was also charged for the full cost of his post-hospital extended care for the time spent at the Coplon Home after July 25, 1977. Ms. Levine challenges this determination on behalf of her deceased father.

■ Initially, we must address the issue of subject matter jurisdiction. Defendant contends that jurisdiction is lacking because the amount of the claim does not exceed $1,000 as required by 42 U.S.C. § 1395ff(b)(2). It is defendant's argument that the plaintiff has not put into controversy the claim for benefits for Mr. Gordon's post-hospital care, which would amount to over $5,000. Defendant argues that the complaint encompasses only reimbursement for the hospital co-insurance claims which Mr. Gordon paid, which total only $370.00.

The court rejects this argument. With regard to the alleged deficiencies in the plaintiff's pleadings, the court notes that plaintiff does state in her complaint that the deceased was entitled to extended care benefits, and she requests benefits pursuant to Medicare-Part A, which encompasses both in-hospital and extended care benefits. Mindful of the fact that plaintiff is proceeding *pro se*, we find that the pleadings are adequate to raise the claim for post-hospital benefits. *Fries v. Barnes*, 618 F.2d 988 (2d Cir. 1980).

■ The court disagrees with defendant's second jurisdictional argument as well. Defendant contends that although the issue of post-hospital benefits was presented before an Administrative Law Judge, it was never finally resolved by the Appeals Council. Therefore, there is no final determination of the Secretary to be reviewed.

As will be discussed below, the decision of the Appeals Council was that Mr. Gordon was not entitled to benefits because he did

not begin a new spell of illness in 1977. Thus, although the issue was presented, that decision made it unnecessary for the Council to pass upon the findings of the Administrative Law Judge as to whether the post-hospital care Mr. Gordon received was skilled nursing care, which would entitle him to benefits, or merely custodial care, as the Administrative Law Judge found.

It is clear that the determination of the Appeals Council is a final determination. The effect of the decision was to affirm the Administrative Law Judge's findings that Mr. Gordon was not entitled to benefits. To hold otherwise would be to allow the Appeals Council the power to regulate judicial review of its decision by refusing to rule on a particular issue, or by doing so *sub silentio*. This is clearly contrary to the spirit of 42 U.S.C. §§ 405(g) and 1395ff(b), which vest judicial review in the district courts.

Therefore, since the total amounts in controversy for both the in-hospital and extended care benefits are well over the $1,000 jurisdictional threshold, the case is properly before the court.

The administrative decision challenged by Mr. Gordon has two separate issues. The Administrative Law Judge before whom it was presented found, first, that Mr. Gordon began a second spell of illness in July of 1977 and was eligible for in-patient hospital insurance benefits and, second, that he was not entitled to benefits for his post-hospital stay at the Coplon Home because he did not receive, nor did he need, skilled nursing care within the meaning of 42 U.S.C. § 1395x(a).

Pursuant to 20 CFR § 404.957 and 42 CFR § 405.750, this decision was reversed by the Appeals Council on the ground that the Administrative Law Judge erroneously applied the applicable law in interpreting the term "spell of illness."[2] The Social

---

2. Plaintiff's contention that the Appeals Council was without the power to review this finding is without merit. 42 CFR § 405.750 and 20 CFR § 405.957(c)(8) permit the Appeals Council to reopen the case "at any time" for the purpose of correcting clerical errors or errors on the face of relevant evidence. *Califano v.*

Security Administration consistently interprets 42 U.S.C. § 1395x(a) to mean that no new spell of illness can exist where a claimant resided in an extended care facility prior to the commencement of the hospital stay, regardless of the amount or kind of care the claimant received in the institution.

The Appeals Council noted that the Administrative Law Judge departed from administrative decisions because of my prior decision in *Gerstman v. HEW*, 432 F.Supp. 636 (W.D.N.Y.1977). In *Gerstman* this court held that a more flexible approach is in order when construing section 1395x(a). Namely, a new spell of illness may be found despite the fact that a claimant has been staying in an extended care facility immediately prior to the onset of the illness. The interpretation is in accord with that of other district courts. *See Eisman v. Mathews*, 428 F.Supp. 877 (D.Md.1977); *Burt v. Secretary of HEW*, CCH Medicare & Medicaid Rptr. ¶ 29, 624 (E.D.Cal.1979); *Hardy v. Matthews*, Medicare & Medicaid Rptr., ¶ 28,031 (N.D.Cal.1977).

The Appeals Council disregarded this precedent upon a novel legal theory. The Council stated:

The Secretary and, thereby, the Appeals Council and the administrative law judge are bound by the Social Security Act, regulations, rulings and U. S. Supreme Court decisions. A district or circuit court decision is binding only in the specific case to which it applies and the administration is not bound in other similar cases unless it decides to acquiesce by issuing a regulation, ruling or other policy change.

The Council found that Mr. Gordon was continuously an in-patient of a hospital or extended care facility and thus remained within the same spell of illness during the period under consideration.

■ In reviewing this decision, we are aware that the decision of the Secretary must be affirmed if it is supported by "substantial evidence." *Bastien v. Califano*, 572 F.2d 908 (2d Cir. 1978). This standard is

not, however, applicable to a review of questions of law. The court may reverse or remand a case for an erroneous application of the law. *Aubeuf v. Schweiker*, 649 F.2d 107, 115 (2d Cir. 1981); *Carter v. Schweiker*, 649 F.2d 937, 942 (2d Cir. 1981).

■ It is evident from the transcript that the Appeals Council and, hence, the Secretary, have made a clear error of law with regard to the proper weight to be given to this court's interpretation of the Social Security statute. As was stated in Gerstman:

This court of course acknowledges the general rule that agency interpretations should be accorded substantial weight. The final interpretation of the Social Security Act is, however, by its own provisions, a judicial function.

432 F.Supp. at 638. *See Social Security Board v. Nierotko*, 327 U.S. 358, 368–69, 66 S.Ct. 637, 642–43, 90 L.Ed. 718 (1946).

At the time the *Gerstman* case was decided, the Secretary had the right to appeal the decision. Indeed, if the Secretary was of the opinion that the holding in *Gerstman* was erroneous, the Secretary should have done so in order to clarify the conflict. The Secretary chose not to appeal but, instead, chose to disregard the ruling. This is not an option available to him. Unless a decision of the court is reversed by the United States Court of Appeals for the Second Circuit or by the United States Supreme Court, it remains the law of the district. The Secretary is bound to follow that law in interpreting the statute. His failure to do so is erroneous and, therefore, the court finds that the decision of the Secretary cannot be affirmed.

Since the evidence shows, and the Administrative Law Judge determined, that there was a period of at least 60 consecutive days between February and July 15, 1977, wherein Mr. Gordon neither required nor received a covered level of extended care services, a new spell of illness began with the July 15 hospitalization. Thus, plaintiff contends that the 10 days of in-patient hospital care

*Sanders*, 430 U.S. 99, 102, 97 S.Ct. 980, 982, 51 L.Ed.2d 192 (1977).

between July 15 and July 25 are not subject to the hospital co-insurance reduction of 42 U.S.C. § 1395e(a).

 There remains the question, however, whether the second determination of the Administrative Law Judge is supported by substantial evidence. Plaintiff argues that it is not and thus cannot be affirmed. Plaintiff has cited to numerous instances, reported in the nurses' progress notes at the Coplon Home, which demonstrate that staff members often were called upon to exercise discretion with regard to the administration of Mr. Gordon's medication and to supervise his condition.

It is apparent from the record, however, that this evidence was presented before the Administrative Law Judge and that he took the evidence into consideration in making the original determination. In his comprehensive and detailed opinion, the Administrative Law Judge reviewed the patient's progress notes and the Medical Assessment Abstract reports and considered the opinion of the plaintiff's treating physician, Dr. Lang. His conclusion, nevertheless, was that the evidence

> fail[ed] to establish that the claimant required and received a covered level of skilled nursing or skilled rehabilitation services, which as a practical matter could have only been provided at a skilled nursing facility on an inpatient basis, during at least the first five weeks following his readmission to the Rosa Coplon Home.

Transcript at 36.

Keeping in mind the proper standard of review, *Rine v. Weinberger*, 401 F.Supp. 1134, 1138 (N.D.W.Va.1975), this court cannot say that the determination of the Secretary is not supported by substantial evidence. The evidence amply supports the Administrative Law Judge's findings that skilled care was neither received nor needed by Mr. Gordon on a daily basis during the time in question, and no payments may be made under the Act where expenses are incurred for custodial care alone. 42 U.S.C. § 1395y(a)(9).

Accordingly, the decision of the Secretary is affirmed in part and reversed in part. The decision is remanded to the Secretary for a computation of benefits for the period of Mr. Gordon's hospitalization in July, 1977.

So ordered.