**Pauline STEINBERG, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. 82 CIV 1833 (LBS).**

United States District Court, S.D. New York.

Sept. 16, 1982.

Schwab, Goldberg, Price & Dannay, New York City, for plaintiff; Morton L. Price, Sidney N. Weiss, New York City, of counsel.

John S. Martin Jr., U.S. Atty., for S.D. New York, New York City, for defendant; Carolyn Simpson, Asst. U.S. Atty., Tamar K. Klein, Asst. Regional Atty., Dept. of Health and Human Services, New York City, of counsel.

## OPINION

SAND, District Judge.

This action seeks review of the final decision of defendant denying plaintiff's claim for certain hospitalization benefits under the Medicare provisions of the Social Security Act, as amended, 42 U.S.C. §§ 1395 et seq. The Court's jurisdiction in this matter is founded on 42 U.S.C. §§ 405(g), 1395ff(b). There being no dispute between the parties as to the applicable facts, it is appropriate that this matter be decided on the cross-motions for judgment on the pleadings.

## FACTS

Plaintiff entered Mt. Sinai Hospital in New York City ("Mt. Sinai") on November 18, 1978, and was discharged on March 27, 1979, whereupon she became a resident of the Jewish Home and Hospital for the Aged, a skilled nursing facility in New York City (the "Jewish Home"). Plaintiff remained at the Jewish Home until February 6, 1980, when she was again admitted to Mt. Sinai, from which she was discharged on February 29, 1980.

Plaintiff was denied Medicare coverage for her second stay at Mt. Sinai on the ground that on February 6, 1980, she was not eligible for a new "spell of illness", as defined in 42 U.S.C. § 1395x(a) and discussed more fully below. Upon plaintiff's timely request for a hearing, Administrative Law Judge Gerald Sheindlin (the "ALJ") found on May 28, 1981, that plaintiff was eligible for a new spell of illness and awarded her appropriate relief. On February 22, 1982, the Appeals Council, upon its own motion, issued an order reopening and revising the determination of · the ALJ. The Appeals Council held that plaintiff's hospitalization on February 6 did not commence a new spell of illness and, as a result, her subsequent stay at Mt. Sinai was not covered by Medicare. It is from this order of the Appeals Council, constituting the final decision of the Secretary, that plaintiff appeals.

## ISSUES

Plaintiff argues two grounds for setting aside the decision of the Appeals Council and reinstating that of the ALJ. First, plaintiff contends that defendant's decision finding that plaintiff was ineligible for a new spell of illness on February 6, 1980, is erroneous as a matter of law. Second, plaintiff claims that defendant lacked "good cause" to reopen plaintiff's case, as required by 42 C.F.R. § 405.750(b)(2) and 20 C.F.R. § 404.989(a)(3) where such opening occurs more than six months after an intermediate administrative determination.

## DISCUSSION

*Spell of Illness*

Section 1395d(a)(1) of Title 42 provides coverage for the first 90—and, in some instances, 150—days of inpatient hospital services received during each "spell of illness". Once this coverage is exhausted, a new spell of illness must begin before an individual is once again eligible for benefits under this section.

The term "spell of illness" is defined at 42 U.S.C. § 1395x(a) to mean a period of consecutive days

"(1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A, and

(2) ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpa-

tient of a hospital nor an inpatient of a skilled nursing facility."

Because the ALJ found, and the parties do not contest, that the Jewish Home is a "skilled nursing facility" as defined by the statute; that plaintiff was admitted to the Jewish Home on a custodial basis only; and that plaintiff did not require or receive skilled nursing service during her stay there, the issue posed is whether plaintiff's custodial residence at the Jewish Home permits her to be characterized during that period as "neither an inpatient of a hospital nor an *inpatient of a skilled nursing facility*", 42 U.S.C. § 1395x(a)(2) (emphasis supplied). If plaintiff cannot be so characterized, as defendant maintains, then the spell of illness that began with her November 18, 1978, hospitalization continued throughout her subsequent residence at the Jewish Home and consequently prevented the commencement on February 6, 1980, of a new spell of illness. Plaintiff, on the other hand, maintains that her residence at the Jewish Home was not in the nature of an "inpatient of a skilled nursing facility" and thus made her eligible for a new spell of illness by February 6, 1980.

After examining the statute, the sparse legislative history, and the several cases on this issue, we find that we are in accord with the plaintiff's interpretation of section 1395x(a)(2).

Defendant argues that section 1395x(a) manifests the intent on the part of its drafters to establish two differing tests to be used in computing the length of a spell of illness: Paragraph (1) of that subsection, concerning the determination of the beginning of a spell of illness, employs terminology relating to the nature of services received by the individual, *i.e.*, "inpatient hospital services" and "extended care services", defined at 42 U.S.C. §§ 1395x(b), (i), respectively; paragraph (2) of section 1395x(a), relating to determining when a spell of illness is deemed to have ended, refers to the nature of institution in which the individual is found, *i.e.*, "hospital" and "skilled nursing facility", defined at 42 U.S.C. §§ 1395x(e), (j), respectively. Thus, argues

defendant, any consideration with regard to section 1395x(a)(2) of the nature of services rendered plaintiff while at the Jewish Home is improper. Under the defendant's view, plaintiff was, from March 27, 1979, to February 6, 1980, an "inpatient of a skilled nursing facility" solely by virtue of the fact that she resided at the Jewish Home, a skilled nursing facility.

█ The Court, however, is of the opinion that the drafters of section 1395x(a)(2) intended more than mere physical presence by their use of the term "inpatient". While we concur with defendant's statement that "inpatient" is not a defined term in the statute, we do not feel compelled, as apparently does defendant, to find the word relieved of its plain meaning, *viz.*, a patient who "received lodging and food as well as treatment", the term "patient" meaning a "sick individual especially one awaiting or under the care and treatment of a physician or surgeon." Webster's Third World New International Dictionary, *quoted in Eisman v. Mathews*, 428 F.Supp. 877, 879 (D.Md. 1977). Accordingly, the phrase "inpatient in a skilled nursing facility" must be understood to refer to an individual who both resides in a skilled nursing facility *and* receives the "skilled nursing care", the provision of which characterizes an institution as a skilled nursing facility pursuant to 42 U.S.C. § 1395x(j)(1). Where, as here, the latter factor is concededly absent, an individual cannot properly be said to be an inpatient of a skilled nursing facility.

Plaintiff and defendant proffer various items of legislative history as supportive of their respective positions, none of which bears directly on the issue at hand. As pointed out by the court in *Eisman, supra,* 428 F.Supp. at 879:

"There is no evidence that the type of factual situation presented here was expressly considered by Congress when it arrived at its definition of the termination of a 'spell of illness.' Yet all of the reported cases dealing with the issue of when a 'spell of illness' ends have arisen in factual circumstances similar to those here where the patient remained in a

nursing home after Medicare coverage and skilled nursing care terminated because no family members were able and/or willing to care for that patient and the nursing home care consequently was merely custodial. [Citations]."

■ To adopt defendant's interpretation of section 1395x(a)(2) would result in denying benefits to an individual who, because of the unavailability of other accommodations, must upon successful completion of hospital treatment move directly into a nursing home, while granting benefits to an individual fortunate enough to be able to return from the hospital to his family. In light of this. Circuit's well-established principle that the Social Security Act is a remedial statute, to be broadly construed and liberally applied, *Rosenberg v. Richardson,* 538 F.2d 487, 490 (2d Cir. 1976); *Herbst v. Finch,* 473 F.2d 771, 775 (2d Cir. 1972); *Haberman v. Finch,* 418 F.2d 664, 666 (2d Cir. 1979), we cannot put aside our plain reading of section 1395x(a)(2) in favor of one that would effect such an inequitable and unjustifiable anomaly. We note, too, that in so holding we join the majority of courts that have considered this issue. *See Picard v. Secretary of Health & Human Services,* Medicare & Medicaid Guide (CCH) ¶ 30,722 (S.D.N.Y.1980) (Werker, J.); *Eisman v. Mathews, supra; Gerstman v. Secretary of Health, Education & Welfare,* 432 F.Supp. 636 (S.D.N.Y.1977); *Hasek v. Mathews,* Medicare & Medicaid Guide (CCH) ¶ 28,345 (N.D.Cal.1977); *Fineberg v. Secretary of Health, Education & Welfare,* 363 F.Supp. 1382 (W.D.N.Y.1973); *but see Stoner v. Califano,* 458 F.Supp. 781 (E.D. Mich.1978), and *Brown v. Richardson,* 367

F.Supp. 377 (W.D.Pa.1973) (remanding on alternative grounds).[1]

*Good Cause*

■ Plaintiff's second argument in support of setting aside defendant's decision is based on an alleged procedural irregularity in the reopening of plaintiff's case subsequent to the ALJ's determination in plaintiff's favor. When such opening occurs more than sixty days after the ALJ determination, as here, defendant must, pursuant to its own regulations, have "good cause". 42 C.F.R. § 405.750(b)(2). "Good cause", in turn, is defined in 20 C.F.R. § 404.989.[2] Defendant asserts good cause pursuant to subsection (a)(3) of this regulation in that the ALJ's decision was erroneous as a matter of law, while plaintiff contends that subsection (b) therein vitiates defendant's assertion of good cause in this instance.

The intent underlying subsection (b) appears clear: the claimant who has obtained intermediate administrative relief is after six months entitled to a reasonable degree of finality as against subsequent administrative or legal reconsiderations of the interpretation on which his victory was founded. *A fortiori,* in this instance, where defendant attempts to rely on an interpretation it posited as early as 1969, *see* Social Security Ruling 69–42, Cum.Bull, 1969, at 146, and where the ALJ's contrary construction was in full accord with the law of this district as established in *Picard, supra* (the facts of which are on all fours with those of this case), and with the holdings of

---

1. The Court finds unpersuasive defendant's argument that Congress, by failing to act, has acquiesced in the Secretary's interpretation of section 1395x(a)(2), as articulated in Social Security Ruling 69–42, Cum.Bull.1969, at 146. No evidence suggesting that Congress has been made aware of the Secretary's position, *cf. Zenith Radio Corp. v. United States,* 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978), or preferred it to the numerous judicial rulings to the contrary, has been brought to the Court's attention.

2. 20 C.F.R. § 404.989 provides:

"(a) We will find that there is good cause to reopen a determination or decision if—
(1) New and material evidence is furnished;
(2) A clerical error in the computation or recomputation of benefits was made; or
(3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made. (b) We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made."

the compelling majority of courts that have considered this issue—none of which defendant took the opportunity to appeal, the Court is persuaded that the reopening on the stated ground was without "good cause" and that the decision of the ALJ was final as against the challenge defendant raises herein.

## CONCLUSION

In accordance with the above, defendant's motion is denied; plaintiff's cross-motion is granted. The decision of the Secretary of Health and Human Services, as enunciated in the decision of the Appeals Council, is hereby reversed and the decision of the ALJ is hereby reinstated. Judgment is rendered for the plaintiff.

Submit judgment on notice.